IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE JOHNSON,

                Petitioner,

        vs.

KATHLEEN DICKINSON, Warden,
California Medical Facility,

                Respondent.

No. 2:10-cv-01251-JKS

MEMORANDUM DECISION

George Johnson, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.  Johnson is currently in the custody of the California

Department of Corrections, incarcerated at the California Medical Facility.  Respondent has

answered and Johnson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Upon retrial,[1] a Sacramento County Superior Court jury convicted Johnson of one count

of Murder in the First Degree, Cal. Penal Code § 187(a), and one count of Stalking, Cal. Penal

Code § 636.9(a).  The jury also found true the allegation that Johnson had used a firearm during

the commission of the murder, Cal. Penal Code §§ 1203.06(a)(1), 12022.5(a)(1).  The trial court

found true the allegations that Johnson had suffered a prior conviction, Cal. Penal Code

§§ 667(a), 667(b)-(i), 1170.2.  In May 2006 the trial court sentenced Johnson to a prison term of

---

[1] After Johnson's original conviction was affirmed by the California Court of Appeal, it
was overturned for an instructional error in a federal habeas proceeding. *Johnson v. Knowles*,
Civ. S-01-0657 FCD JFM P.

fifty years to life, plus nineteen years.  The California Court of Appeal, Third Appellate District,

affirmed Johnson's conviction and sentence in a partially published opinion,[2] and the California

Supreme Court denied review on October 1, 2008.  Johnson timely filed his Petition for relief in

this Court on May 21, 2010.[3]

     Johnson's conviction arose out of the murder of Johnson's wife, Linza, on December 16,

1996.  The facts of the crime, as summarized by the California Court of Appeal:

> Defendant arrived at the house between 8:00 and 9:00 a.m. in his sister's blue
> Honda Accord.  He approached George, Jr., who was standing in the front yard.
> Defendant demanded the keys to the house, saying, "You're not leaving—you're not
> going anywhere."  He grabbed the keys, unlocked the front door, and headed for the
> kitchen with George, Jr., right behind him.  A scuffle ensued.  Defendant pulled a
> small black revolver from his back pocket.  George, Jr., knocked the gun from
> defendant's hand, but it landed within defendant's reach.  Fearing that defendant
> would shoot him, George, Jr., ran from the house.  He and Stansfield's son went to
> a neighbor's house to call 911.
>     When defendant reached the kitchen, he pulled the telephone wire from the
> wall and threw the phone on the floor.  Linza came out of the master bedroom telling
> defendant to put the gun down so that they could talk.  Defendant responded that he
> was going to kill her.  He and Linza struggled in the hallway and inside the master
> bedroom.  Stansfield heard the bedroom door slam, Linza saying, "George, George,
> stop, George stop," then three gunshots.
>     Stansfield tried to get out of the house through the garage, but the door was
> locked.  When defendant left the house, Stansfield went back inside the house to call
> 911 from George, Jr.'s room.  Defendant was on the porch and Linza was at the front
> door.  Stansfield heard defendant say, "Bitch, you lied to me."  Linza had her hand
> over the deadbolt, talking with defendant.  She was trying to get defendant to calm
> down and leave, but defendant continued to demand that she unlock the door.
> Stansfield described defendant's voice as "mean and ugly."

---

[2] *People v. Johnson*, 79 Cal. Rptr. 3d 568 (Ct. App. 2008).  The entire decision is attached
to the Petition.  Docket No. 1-1 at 6-31.

[3] Respondent initially moved to dismiss the Petition on the ground that it was untimely.
Docket No.13.  After Johnson opposed the motion, Respondent, conceding that Johnson had
established sufficient grounds for equitable tolling, requested the motion be withdrawn.  Docket.
No. 22.  This Court granted that motion.  Docket No. 24.

While making the 911 call in George, Jr.'s, room, Stansfield heard shooting. She hid in the closet. When Stansfield came out, she saw Linza laying on the floor near the front door.

There were two witnesses to what occurred on the front porch. George, Jr., who was across the street calling 911 from the neighbor's house, saw defendant standing close to the front door. He heard defendant scream, "Open up the door." At that point, George, Jr., heard two or three more gunshots. Defendant had a gun in his left hand when he turned and walked toward Linza's car.

Tsugio Tomono, the Johnson's neighbor, saw defendant arrive at the house around 9:00 a.m. Shortly after defendant entered the house, Tomono saw two young men run across the street and heard gunshots. He then heard glass breaking and "three pops." Both George, Jr., and Tomono watched defendant leave the scene.

Paramedics arrived at the Johnson house at 9:27 a.m. They were unable to revive Linza. The forensic pathologist testified that Linza died from a gunshot wound to the chest.[4]

## II.  GROUNDS RAISED/DEFENSES

Johnson raises four grounds for relief: (1) denial of his motion to substitute retained counsel on the eve of trial denied him his Sixth Amendment right to counsel of his choice; (2) admission of prior uncharged conduct (domestic violence) was unduly prejudicial; (3) an improper jury instruction allowed the jury to convict on a standard less than beyond a reasonable doubt; and (4) prosecutorial misconduct (improper closing argument misstating the reasonable doubt standard improperly shifting the burden of proof to Johnson).[5]  Respondent asserts no affirmative defense.[6]

Johnson requested an evidentiary hearing and appointment of counsel, which requests were denied without prejudice.  In his Traverse, Johnson has renewed his request for an evidentiary hearing and appointment of counsel.

---

[4] *Johnson*, 79 Cal. Rptr. 3d at 570-71.

[5] Johnson's Petition incorporates verbatim his Petition for Review filed in the California Supreme Court.

[6] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[7] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412 (alteration added).

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be "objectively unreasonable," not just "incorrect or erroneous."[11]   The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[12]   "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]   In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[14]   Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[15]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  *Cf. Felker v.*
> *Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing
> AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue*
> *the writ in cases where there is no possibility fairminded jurists could disagree that*
> *the state court's decision conflicts with this Court's precedents.  It goes no farther.*
> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme
> malfunctions in the state criminal justice systems," not a substitute for ordinary error

---

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[16]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[17]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[18]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[19]

## IV.  DISCUSSION

### A.     Evidentiary Hearing

Ordinarily, a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[20]  In this case, Johnson was

---

[16] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[17] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[18] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[19] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[20] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1

given the opportunity to develop the factual basis for his claims in the Sacramento County Superior Court.  Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[21]  It does not appear from the record that the California appellate courts made any independent evidentiary findings, and review in this case is based upon the findings of the Sacramento County Superior Court, which did hold a full hearing developing the facts.  Johnson has not identified any factual conflict to resolve that would require this Court to hold an evidentiary hearing.  The renewed request for an evidentiary hearing is, therefore, **DENIED**.

**B.     Appointment of Counsel**

There is no constitutional right to counsel in federal habeas proceedings.[22]  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.[23]  This Court may appoint counsel under the Criminal Justice Act in this case if the court determines that the interests of justice so require.[24]  This Court does not so determine.  The basis for Johnson's request is that he has suffered a stroke and has limited use of his hands, which severely curtails his writing and typing abilities.  Johnson has, however,

---

(1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[21] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[22] *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).

[23] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rules 6(a), 8(c) (2011).

[24] 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").

been able to overcome that disability by the use of the services of a fellow inmate.  Johnson was

represented by counsel in pursuing his direct appeal in the state courts.  His Petition in this Court

is based upon the identical facts and legal theories as was presented on direct appeal.  Indeed,

review of Johnson's claims in this Court is limited to the same factual and legal bases as were

presented to the state courts.[25]  The renewed request for appointment of counsel is, therefore,

**DENIED**.

**C.     Merits**

Ground 1:  Denial of Request to Substitute Retained Counsel

On the day set for trial to begin, Johnson moved to substitute new counsel, which the trial

court denied.  Johnson contends that in denying his motion, the trial court abused its discretion

and violated his constitutional right to counsel of his own choosing.  The California Court of

Appeal summarized the proceedings in the trial court leading up to the motion, stating:

> The court re-arraigned defendant on the current charges on October 12, 2005.
> Two weeks later, the court set the trial date in February 2006.  At the trial readiness
> conference on February 1, 2006, nearly four months after arraignment, defendant
> made an oral *Marsden* motion.  Defendant made no mention of seeking retained
> counsel at that time.  The court denied the motion finding that: (1) the motion was
> untimely, coming one week before trial; and (2) there had been no irreconcilable
> breakdown in the relationship between defendant and appointed counsel.
>
> On February 16, 2006, the first day of trial, attorney John Brennan made an
> oral motion to substitute as retained counsel.  He requested a two-and-one-half-
> month continuance to prepare for trial.  Brennan represented that the prosecutor had
> agreed to a trial date that would allow for the substitution.  In response to questioning
> by the court, the prosecutor stated that the People had their witnesses under subpoena
> and were ready to proceed.  She had been concerned that two witnesses from out of
> state might not be available to testify if the trial were continued, but told Brennan's
> law partner she had no objection to a continuance if the defense stipulated that the

---

[25] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations
omitted); *Scott v. Schiro*, 567 F.3d 573, 582 (9th Cir. 2009).

prosecution could use the transcript from the first trial if her witnesses failed to appear.

Appointed defense counsel did not object to the substitution but suggested that the court explore the issues discussed with defendant in the *Marsden* hearing held on February 1, 2006.  At the second *Marsden* hearing, the court found that defendant's misgivings about appointed counsel's representation did not rise to the level that would warrant his replacement.  At the close of the hearing, the court stated, "Now, I'm going to bring the attorneys back in and I'm going to look at the request separate from *Marsden* of whether they may substitute in on [defendant's] behalf."

Back on the record with all counsel present, Brennan offered a four-sentence argument:  "[Y]our Honor, for the record, we're only requesting about two-and-[one]-half months of a continuance on this matter.  We fully believe we'll be ready to go at that point, and it's not really delaying the proceedings that much.  It's not a delay tactic.  It's giving [defendant] an opportunity to have counsel of his choosing."  Brennan did not explain why defendant waited until the day of trial to substitute retained counsel,

The court indicated that it would have granted Brennan's request to substitute as retained counsel had it come at an earlier time, but ruled the current motion untimely.  The court explained: "As it stands now, this is the eighth day of ten.  This is eight of ten for trial.  We are starting the trial.  It's sent to me, to this Court, for beginning the trial today.  The district attorney is ready.  Her witnesses are subpoenaed.  Her exhibits are marked.  She's ready to try the case.  [Defendant's] attorney is ready.  He has prepared for this case, and he, as I have indicated already, is a very fine lawyer who is going to be able to fully and adequately and capably represent [defendant].  And given the compilation of all these factors, not the least of which is that this is the day of trial, your motion to substitute in Mr. Brennan and Mr. Wise, very fine attorneys that they are, is denied."[26]

The California Court of Appeal rejected Johnson's arguments, stating:

The parties agree on the general principles governing motions to substitute retained counsel.  A criminal defendant's due process right to effective assistance of counsel includes the right to retain counsel of his or her own choosing. *(People v. Courts* (1985) 37 Cal.3d 784, 789.)  "Although there is not an *absolute* right to be represented by a particular attorney, the courts will make all *reasonable* efforts to insure that a defendant financially able to retain an attorney of his own choice can be represented by that attorney.  Under certain circumstances, due process is denied to a defendant who is not granted a continuance in order to secure a private attorney of his own choosing.  [Citation.]"  (*People v. Johnson* (1970) 5 Cal.App.3d 851, 858.)

---

[26] Docket 1-1 at 17-19 (alteration in original) (footnote omitted).

The parties also acknowledge the limitations on a defendant's right to hire or fire retained counsel. "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time."'" (*People v. Ortiz* (1990) 51 Cal.3d 975, 983-984.) Thus, the right to retained counsel "must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case. [Citation.] A defendant may not, for example, demand a continuance if he is unjustifiably dilatory in obtaining counsel [citation], or if he arbitrarily chooses to substitute counsel at the time of trial [citation]. 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' [Citation.]" (*People v. Byoune* (1966) 65 Cal.2d 345, 346-347.)

When defendant seeks substitution of retained counsel on the day of trial, the question becomes "whether such a disruption was reasonable under the circumstances." (*People v. Turner* (1992) 7 Cal.App.4th 913, 919.) We review the court's ruling for abuse of discretion. (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 850.) Here, the court properly weighed the relevant considerations and did not abuse its discretion in denying the motion.

[. . . .]

Defendant argues that on this record, "[t]he only entity that faced the possibility of prejudice was the trial court itself, but no showing was made that this would somehow affect the 'orderly and expeditious judicial administration.'" He maintains that the requested continuance was "brief." Defendant also contends that it was unnecessary for the court to hold a second *Marsden* hearing to explore the state of communications between defendant and appointed counsel "rather than discuss directly [defendant's] request to retain counsel of his choice."

Contrary to defendant's argument, the court is not the equivalent of a party that is "prejudiced" by a request for continuance. The Legislature grants the court power to provide for the orderly conduct of proceedings before it . . . ." (Code Civ. Proc., § 128, subd. (a) (3).) Here, the court ruled that the untimely motion to substitute retained counsel and request for continuance would disrupt the orderly trial process. Its ruling is supported by the fact that the prosecution had subpoenaed witnesses and both counsel were ready to go to trial. Moreover, the charged offenses occurred in 1996, a federal court had overturned defendant's first conviction, and the court could reasonably conclude that both parties faced challenges in examining witnesses whose memories might have faded in the ensuing years. The prosecutor expressed concern about the availability of out-of-state witnesses in the event of a continuance. The court had discretion to reject in the interest of justice the proposed

stipulation to use testimony from the first trial in the event those witnesses were unavailable.

In his reply brief, defendant argues that he was not dilatory or unreasonable in moving to substitute retained counsel on the first day of trial. He suggests that once the federal court overturned his conviction, there were "certain difficulties in reaching and obtaining new counsel." He highlights the date of his first *Marsden* motion, not the date of his rearraignment in Sacramento County Superior Court, and emphasizes that he made arrangements to hire new counsel within two weeks of the court's denial of the *Marsden* motion. Neither of these arguments was made in the trial court or in defendant's opening brief to counter a potential claim of lack of diligence. Moreover, there is nothing in the record to support this claim. We reject it.

Finally, the court did not misunderstand the difference between a *Marsden* motion and a request to substitute retained counsel. The court held separate hearings to address the issues relevant to each motion. Timeliness was an issue common to both. The court did not abuse its discretion in ruling that the request to substitute counsel and request for continuance were untimely. Defendant does not challenge the court's denial of his *Marsden* motions.[27]

As in California, in the federal system the denial of a motion for the substitution of counsel in a criminal case is reviewed for an abuse of discretion,[28] applying a similar test.[29] The Supreme Court has held that "only [a trial court's] unreasoning and arbitrary 'insistence upon

---

[27] Docket 1-1 at 15-21 (alterations in original). The omitted portion is the proceedings in the trial court recited above. The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case that held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting to substitute counsel the opportunity to present his reasons for the request, *i.e.,* evidence and argument to establish that he is receiving ineffective assistance of counsel.

[28] *United States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009) (citing *United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005)).

[29] *Id.* ("Under our established rule, we consider: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." (citing *Prime*, 431 F.3d at 1154)).

expeditiousness in the face of a justifiable request for delay'" violates the Sixth Amendment.[30]

In a case in which the motion to substitute counsel was made two days before trial the Supreme

Court upheld the denial of the motion, concluding that "with the motion for substitution of

counsel made so close to the time of trial, the District Court relied on instinct and judgment

based upon experience" and did not exceed its "broad latitude."[31]  Consequently, this Court

cannot say that the decision of the California Court of Appeal was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" at the time the state court rendered its decision or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[32]  Johnson is not entitled to relief under his first ground.[33]

Ground 2:  Admission of Prior Uncharged Conduct

The prosecution introduced evidence of four uncharged incidents of domestic violence

between Johnson and Linza.  The first occurred in December 1986; the second in December

1988; the third in October 1990; and the fourth in August 1992.  The California Court of Appeals

rejected Johnson's argument that the trial court erred in allowing the admission of that evidence:

> Defendant argues that the court abused its discretion and violated his due
> process rights by admitting evidence of uncharged acts of domestic violence under
> Evidence Code sections 1109 and 352.   On the constitutional question, defendant
> concedes that we are required to follow *People v. Falsetta* (1999) 21 Cal. 4th 903,

---

[30] *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

[31] *Wheat v. United States*, 486 U.S. 153, 157, 163 (1988).

[32] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[33] *Miller v. Blacketter*, 525 F.3d 890, 897-98 (9th Cir. 2008) (citing *Slappy* and *Wheat*).

12

which holds that Evidence Code section 1108, a similar statute dealing with admission of uncharged sexual offenses, does not violate due process. Defendant raises the due process issue to preserve it for federal review. The remaining question is whether the court abused its discretion under Evidence Code section 352 by admitting four incidents of uncharged domestic violence. We conclude it did not.[34]

Distilled to their essence, Johnson's arguments are that California Evidence Code § 1109 allowed the jury to find him guilty based upon a propensity to engage in domestic violence,[35] which rendered his trial fundamentally unfair, thereby depriving him of due process. The Ninth Circuit has noted that "[s]ection 1109 does not alter the quantum of evidence needed to convict a defendant . . . [it] relates to admissibility, not sufficiency." [36] The fatal flaw in Johnson's arguments, however, is that no court, including the Supreme Court, has ever held that the introduction of propensity evidence is *per se* prohibited by the federal Constitution. It is purely and simply a rule of evidence, not a rule of constitutional law. Thus, because the Supreme Court has not ruled on the question of whether propensity evidence violates the Due Process Clause, admission of this evidence was not contrary to, nor an unreasonable application of, clearly

---

[34] Docket No. 1-1 at 21.

[35] As relevant to this case, § 1109 provides: "(a)(1) Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

[36] *Doe v. Busby*, 661 F.3d 1001, 1023 (9th Cir. 2011) (quoting *Schroeder v. Tilton*, 493 F.3d 1083, 1088 (9th Cir. 2007)) (a case involving § 1108, an exception on the ban of propensity evidence for prior sexual misconduct).

established federal law.[37]  Because he has failed to raise a question of constitutional magnitude,

Johnson is not entitled to relief under his second ground.

Ground 3:  Improper Jury Instruction

At trial, the jury was charged with CALCRIM 852, which, as relevant to this proceeding,

read:

>        "The People presented evidence that the defendant committed domestic
> violence that was not charged in this case, specifically, four acts alleged to have
> occurred in 1986—one in 1986, one in 1988, one in 1990, and one in 1992.
>        "Domestic violence means abuse committed, for our purposes, against an
> adult who is a spouse.  Abuse means intentionally or recklessly causing or attempting
> to cause bodily injury or placing another person in reasonable fear of imminent
> serious bodily injury to himself or herself or to someone else.
>        "You may consider this evidence only if the People have proved by a
> preponderance of the evidence that the defendant in fact committed the uncharged
> domestic violence.  [¶]  Proof by a preponderance of the evidence is a different
> burden of proof from proof beyond a reasonable doubt.  [¶]  A fact is proved by a
> preponderance of the evidence if you conclude that it is more likely than not that the
> fact is true.  [¶]  If the People have not met this burden of proof, you must disregard
> this evidence entirely.
>        "If you decide that the defendant committed the uncharged domestic violence,
> you may, but are not required to, conclude from that evidence that the defendant was
> disposed or inclined to commit domestic violence and based on that decision also
> conclude that the defendant was likely to commit and did commit the offense charged
> in Count One of the Information or the lesser offenses of which I also instructed you
> on relating to Count One.  [¶]  If you conclude that the defendant committed the
> uncharged domestic violence, that conclusion is only one factor to consider along
> with all the other evidence.  It is not sufficient by itself to prove that the defendant
> is guilty of any of those offenses.  The People must still prove each element of every
> charge beyond a reasonable doubt.  [¶]  . . . [¶]

---

[37] *See Estelle v. McGuire,* 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on
whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'
evidence to show propensity to commit a charged crime."); *Davis v. Grigas,* 443 F.3d 1155, 1158
(9th Cir. 2006) (noting that where the Supreme Court has not established clear law, a state
court's decision cannot be contrary to or an unreasonable application of it under AEDPA); *see
also Alberni v. McDaniel,* 458 F.3d 860, 863, 867 (9th Cir. 2006) (explaining that habeas
petitioner's argument that the use of propensity evidence violated his right to due process fails to
meet AEDPA's threshold).

"Do not consider this evidence for any other purpose, except for the limited purpose of the 1992 allegation. You may consider that as a prior inconsistent statement."[38]

As he did before the California courts, Johnson contends that because it expressly permits the jury to do the impermissible—infer guilt based on propensity—the instruction violates his due process rights. Johnson further contends that CALCRIM 852 impermissibly reduces the prosecution's burden of proof by permitting a jury to find guilt based upon an inference drawn from past acts proven by a mere preponderance of the evidence. In the published portion of its decision, the California Court of Appeal rejected Johnson's arguments, holding:

As we explained, Evidence Code sections 1108, allowing admission of evidence of uncharged sexual offenses, and 1109, allowing admission of evidence of uncharged domestic violence, is "virtually identical." (*Johnson, supra,* 77 Cal.App.4th at p. 417, 91 Cal.Rptr.2d 596.) Likewise, the language of CALCRIM No. 1191, the current instruction on Evidence Code section 1108, tracks the language of CALCRIM No. 852, the current instruction on Evidence Code section 1109.

This court recently rejected a constitutional challenge to CALCRIM No. 1191 in *Schnabel,* stating:

"As to defendant's challenge to the instruction, it is based on his assertion that the instruction on the use of prior sex offenses 'wholly swallowed the "beyond reasonable doubt" requirement.' The California Supreme Court has rejected this argument in upholding the constitutionality of the 1999 version of CALJIC No. 2.50.01. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016, 130 Cal.Rptr.2d 254, 62 P.3d 601.) The version of CALJIC No. 2.50.01 considered in *Reliford* is similar in all material respects to Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 1191 (which was given here) in its explanation of the law on permissive inferences and the burden of proof. We are in no position to reconsider the Supreme Court's holding in *Reliford* (*Auto Equity Sales, Inc. v. Superior Court* [1962] 57 Cal.2d [450] at p. 455, 20 Cal.Rptr. 321, 369 P.2d 937), and by analogy to *Reliford,* we reject defendant's argument regarding the jury instruction on use of his prior sex offenses." (*Schnabel, supra,* 150 Cal.App.4th at p. 87, 57 Cal.Rptr.3d 922, fn. omitted.) The same rationale applies to the case before us.[39]

---

[38] *People v. Johnson*, 79 Cal. Rptr. 3d 563, 573 (Ct. App. 2008).

[39] *Id.* at 573-74 (alterations in original) (footnotes omitted).

Johnson's first argument, that the challenged instruction, which implements California

Evidence Code § 1109,[40] impermissibly permits a conviction based upon propensity evidence,

fails for the same reason as did Johnson's second ground—the Supreme Court has never held

that the admission of propensity evidence violates the Due Process Clause.[41]

Turning to the second part of Johnson's argument, the Ninth Circuit did hold that the

1966 version of CALJIC 2.50.02, like the nearly identical 1966 version of CALJIC 2.50.01,[42]

impermissibly permitted a jury to find a defendant guilty based upon a mere preponderance of

evidence.[43]  Like the California Supreme Court in *Reliford* did on the 1999 version of CALJIC

2.50.01, in *Schultz* the Ninth Circuit rejected the argument that the 2002 version of CALJIC

2.50.01 misstated the prosecution's burden of proof.[44]  Just as the California Court of Appeal was

bound by the decision in *Reliford*, this Court is also bound by the Ninth Circuit's decision in

*Schultz*.[45]  Given the similarities between CALCRIM 1191 and CALCRIM 852, this Court can

find no principled reason not to apply *Schultz* to CALCRIM  852 with the same result.

Consequently, this Court cannot say that the decision of the California Court of Appeal was

---

[40] As did its predecessor, CALJIC 2.50.02.

[41] *McGuire*, 502 U.S. at 75 n.5.

[42] Each version of CALJIC 2.50.01 and 2.50.02 were identical in all respects, except that 2.50.01 addressed prior acts of sexual assault and 2.50.02 addressed prior acts of domestic violence.  CALCRIM 1191 is the current version of CALJIC 2.50.01 and CALCRIM 852 is the current version of CALJIC 2.50.02.

[43] *Doe v. Busby*, 661 F.3d 1001, 1015-17 (9th Cir. 2011) (citing *Gibson v. Ortiz*, 387 F.3d 812, 817, 822-25 (9th Cir. 2004), *overruled in part by Hedgpeth v. Pulido,* 555 U.S. 57, 60 (2008), *as recognized in Byrd v. Lewis,* 566 F.3d 855, 866-67 (9th Cir.2009)).

[44] *Schultz v. Tilton*, 659 F.3d 941, 943-44 (9th Cir. 2011).

[45] *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[46]   Accordingly, this Court finds that Johnson is not entitled to relief under his third ground.

Ground 4:  Prosecutorial Misconduct

Johnson contends that the prosecutor committed prejudicial misconduct by misstating the reasonable doubt standard and shifting the burden of proof.  The prosecutor stated: "and if one of you says to the other 11, I have a reasonable doubt, and the other 11 of you ask that person cordially to explain themselves, to articulate the doubt, to determine if the doubt is based upon real evidence that was up there, the believable evidence that was up here or if it's an imaginary doubt."[47]   In the unpublished part of its decision, the Court of Appeals rejected Johnson's argument, stating:

> [Johnson] contends that the prosecutor committed prejudicial misconduct by misstating the reasonable doubt standard and shifting the burden of proof during closing argument.  He maintains that the prosecutor's use of the term "articulate" improperly suggested that jurors had to have a "good reason" to doubt.  We reject his contention.
> """A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"" [Citations.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'"" [Citation.]"  (*People v. Samayoa* (1997) 15 Cal. 4th 795, 841 (*Samayoa*).)  At the

---

[46] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[47] Docket No. 1 at 51.

17

same time, "'"'a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.]"'"'" (*People v. Hill* (1998) 17 Cal.4th 800, 819 *(Hill*).)   In reviewing a claim of misconduct based on the prosecutor's argument to the jury, we will not "'lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970.)

"As a general rule a defendant *may* not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]  Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*Samayoa, supra,* 15 Cal. 4th at p. 841.)

We conclude that [Johnson] forfeited his claim of misconduct by failing to make a timely objection and request an admonition at trial.  (See *People v. Panah* (2005) 35 Cal. 4th 395, 462.)  However, we address the merits of [Johnson's] claim to show that defense counsel was not ineffective for failing to object to the prosecutor's comments.

Toward the end of the prosecutor's argument on reasonable doubt, she stated: "Now, all 12 of you have to go back into that jury deliberation room and you have to listen to the thoughts and concerns of other people.  And if one of you says to the other 11, I have a reasonable doubt, the other 11 of you ask that person cordially to explain themselves, to *articulate* the doubt, to determine if the doubt is based upon the real evidence that was up here, the believable evidence that was up here or if it's an imaginary doubt.  Because not every single piece of this puzzle will be here. There will be questions that may be unanswered by the evidence.  [¶]  As his Honor explained to you earlier when the question was asked about Frank Smith, you are not to speculate about things that are not before you.  And neither side has to call every person mentioned by the evidence.  So ask yourselves and ask the other people back there, am -- what I'm feeling, is it based on something real, is it based on something I can *articulate* or is it based on the fact that somebody is calling a picture of San Francisco St. Louis, even though there is no evidence to back that up.  (Italics added.)

Read in context, the prosecutor's comments did nothing more than emphasize each juror's duty to deliberate by engaging the other jurors in a discussion of the evidence.  The court subsequently instructed the jury on the same point.  There is no reasonable likelihood "that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*Samayoa, supra,* 15 Cal. 4th at p. 841.)  We therefore conclude that there was no misconduct.[48]

---

[48] Docket No. 1-1 at 28-31.

A prosecutor may "prosecute with earnestness and vigor—indeed, he should do so."[49] "To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[50] "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned."[51] "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom."[52] "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."[53]

Similar to the California Court of Appeal, the problem this Court has is in understanding just how it was that the prosecutor's statement misstated the reasonable doubt standard or impermissibly shifted the burden of proof to Johnson. As the California Court of Appeals noted, the prosecutor was reiterating that deliberation included engaging in a discussion, including articulation of a basis for a reasonable doubt other than sheer speculation. Based upon the record before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was

---

[49] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[50] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[51] *Wainwright*, 477 U.S. at 181 (internal quotation marks and citations omitted).

[52] *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

[53] *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[54]  Johnson is not entitled to relief under his fourth ground.

## V.  CONCLUSION AND ORDER

Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[55]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[56]

The Clerk of the Court is to enter judgment accordingly.

Dated:  February 13, 2012.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[54] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[55] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[56] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.